```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────
UNITED STATES OF AMERICA,

                -against-

STEFVON ELEY,

                                Defendant.
────────────────────────────────
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _5/20/2022_

20 Cr. 78-3 (AT)

**ORDER**

ANALISA TORRES, United States District Judge:

Defendant, Stefvon Eley, moves for an order (1) severing his trial from that of his remaining co-defendant, Nyshiem Spencer; and (2) suppressing identification evidence. Def. Mot., ECF No. 349. For the reasons stated below, the motion is DENIED.

## BACKGROUND

On January 28, 2020, the Government filed an indictment against eleven individuals (collectively, "Defendants"), including Eley and Spencer, charging them with participating in a racketeering conspiracy in violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d). Indictment ¶¶ 1–2, 3–8, ECF No. 1. The Government alleges that Defendants are members of the "Monroe Houses Crew," a criminal enterprise operating in and around the James Monroe Houses, a public housing development in the Soundview section of the Bronx. *Id.* ¶¶ 1–2. The Indictment refers to multiple acts of murder, robbery, bank fraud, and narcotics distribution as part of the racketeering activity underpinning the conspiracy. *Id.* ¶ 6. It then lists ten substantive counts against Defendants. *See id.* ¶¶ 9–29. Spencer is not charged in any of the substantive counts proceeding to trial.[1] But, in the

---

[1] Spencer was originally named in Count 9 of the Indictment, narcotics conspiracy, *see* Indictment ¶¶ 24–26. However, the Government no longer intends to proceed to trial on this charge as to Spencer. ECF No. 196.

Indictment, the Government asks the Court to consider, as a special sentencing factor in connection with the RICO conspiracy charge, that, on October 31, 2017, Spencer and others "knowingly and intentionally murdered Luis Vargas" by "plann[ing] and help[ing] [to] carry out a shooting that resulted in [Vargas'] death." Indictment ¶ 8. Although the Indictment does not provide further details about this shooting, the Government's sentencing submission concerning co-defendant Elijah Burt (the "Burt Submission") alleges that, on October 31, 2017, after the Monroe Houses Crew got into an altercation with a rival gang at a deli, Spencer and others went to the Soundview Houses, a nearby housing development which is allegedly that rival gang's territory, to "retaliate" against them. Burt Submission, ECF No. 257 at 1. Spencer then allegedly pulled out a gun and fired six shots, killing Vargas and injuring two others. *Id.* The Government does not allege that Eley was present at Vargas' murder. *See id.* And, in the Burt Submission, the Government ranks Spencer as the most culpable of all the Defendants. *See id.*

Eley is charged in five of the eleven counts in the Indictment. *See generally id.* In addition to the RICO conspiracy charge, he is charged with two counts of committing a violent crime in aid of racketeering, and two counts of possessing, brandishing, and discharging a firearm in relation to these acts. *Id.* ¶¶ 1–8, 13–16, 17–20. The Burt Submission ranks Eley as the second most culpable of the Defendants, and alleges that Eley "committed the most acts of gun violence of his co-defendants, specifically, four shootings." Burt Submission at 1. The Government asserts that Eley is responsible for (1) the June 2015 shooting of a rival gang member; (2) the June 2017 shooting of a former member of the Monroe Houses Crew at point-blank range; (3) the May 2018 shooting at the mother of his child and her family; and (4) the May 30, 2018 drive-by shooting near the Soundview Houses, which again targeted members of a

2

rival gang.[2]  *Id.* at 1–2.

[redacted]

**DISCUSSION**

I.   Severance

   A.  Legal Standard

In general, there is a preference in the federal system for providing defendants indicted together with joint trials. *See Zafiro v. United States*, 506 U.S. 534, 537 (1993).  Joint trials

---

[2] The Government provided details of the witness identification for the May 30, 2018 shooting in a sealed, *ex parte* letter (the "Letter") to the Court, dated March 20, 2020.  A redacted version of the Letter was subsequently provided to defense counsel in January 2022.  ECF No. 333.

serve judicial interests of economy, avoid undue delay, and limit the inequity of inconsistent verdicts. *See id.*; *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003). The preference for joint trials "is particularly strong where . . . the defendants are alleged to have participated in a common plan or scheme," *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998), or are "charged in the same conspiracy," *United States v. Pirro*, 76 F. Supp. 2d 478, 483 (S.D.N.Y. 1999) (collecting cases). But, under Rule 14 of the Federal Rules of Criminal Procedure, where the joinder of multiple defendants in a single indictment "appears to prejudice a defendant," the Court, in its discretion, may sever the defendants' trials, or "provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

"[S]everance is an extreme remedy," and the defendant bears the burden of demonstrating that severance is required. *United States v. Lopez*, No. 18 Cr. 736, 2019 WL 4733603, at *4 (S.D.N.Y. Sept. 27, 2019). To prevail, a defendant must show "substantial prejudice" arising from the joinder. *United States v. Sampson*, 385 F.3d 183, 190 (2d Cir. 2004) (citations omitted). The decision on whether to sever a trial is within the sound discretion of the district court. *Feyrer*, 333 F.3d at 114. And, the Supreme Court has instructed that a district court should grant severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Even where there is a high risk of prejudice, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.*

B. Application

Eley argues that severance is warranted because evidence admissible against Spencer, but inadmissible against him, "will have an unduly prejudicial spillover effect" that will limit the

4

jury's ability to be fair and impartial, thus depriving Eley of his right to a fair trial. Def. Mem. at 5, ECF No. 350. Specifically, Eley argues that because Spencer is implicated in the Vargas murder in connection with the charged conspiracy, whereas Eley is charged only with "nonfatal shootings," evidence related to the Vargas murder would result in a "substantially prejudicial effect of spillover evidence." *Id.* at 7–8. The Court disagrees.

It is undisputed that both Eley and Spencer are charged with participating in a common plan or scheme, and are being tried on a common conspiracy count, predicated on their joint participation in a racketeering conspiracy involving the Monroe Houses Crew. This creates a "particularly strong" preference for a joint trial. *Salameh*, 152 F.3d at 115. Indeed, the "mere allegation" of a conspiracy presumptively satisfies the joinder requirement, because it "implies that the defendants named must have engaged in the same series of acts or transactions constituting an offense." *United States v. Friedman*, 854 F.2d 535, 561 (2d Cir. 1988) (citation and quotation marks omitted).

Certainly, prejudice may occur when "proof inadmissible against a defendant becomes a part of his trial solely due to the presence of co-defendants as to whom its admission is proper." *Salameh*, 152 F.3d at 115. But, "[t]his is an unlikely occurrence when [both] defendants are charged under the same conspiracy count." *Id.* And, Eley has not established that the Government's evidence related to the Vargas murder is inadmissible against him. Indeed, the Government represents that it plans to introduce evidence of the Vargas murder, in addition to other acts of violence, even where Eley and Spencer were not personally present or involved, to demonstrate "the existence of the charged racketeering enterprise, the means and methods of the Monroe Houses Crew, and Eley and Spencer's motives for committing these acts of violence as part of their membership" in that group. Gov't Mem. at 8–9, ECF No. 356. Evidence of such

5

criminal acts, even where the defendant did not personally participate in them, are often admissible to prove the existence of the criminal racketeering enterprise in which the defendant participated. *United States v. Matera*, 489 F.3d 115, 120–21 (2d Cir. 2007); *see also United States v. Diaz*, 176 F.3d 52, 103 (2d Cir. 1999). Because such evidence may be admissible against Eley at a separate trial, it is "neither spillover nor prejudicial." *United States v. Ramos*, 346 F. Supp. 2d 567, 572–73 (S.D.N.Y. 2004).

In addition, although Eley is not alleged to have committed any murders, it is undisputed that he is charged with grave acts of violence. The Indictment charges him with "assault[ing] . . . with a dangerous weapon" and "attempt[ing] to murder" two different individuals—first shooting and injuring a former member of the Monroe Houses Crew, Indictment ¶ 15, and second, in a separate incident, shooting at rival gang members, *id.* ¶ 19. In total, the Government represents that it intends to introduce evidence of Eley having committed four shootings, at least one of which resulted in serious injury to the victim. *See* Burt Submission at 1–2. Even if, as the Government represents, Spencer's charged conduct is "the most serious" of all the defendants, *id.* at 1, "[d]iffering levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials," *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003) (citation omitted). This is particularly so where, as here, the relevant evidence may be admissible against Eley even if he is tried separately, to prove the existence of the underlying racketeering conspiracy, *see Diaz*, 176 F.3d at 103.

Finally, although Eley conclusorily contends that a limiting instruction would not cure the substantial prejudice he believes he will face from a joint trial, he identifies no specific reasons a limiting instruction would be inadequate. Def. Mem. at 8. Limiting instructions are

6

commonly used in multi-defendant, racketeering conspiracy cases such as this, and have been found to be effective in limiting any risk of substantial prejudice. *E.g.*, *Diaz*, 176 F.3d at 104. Eley fails, therefore, to demonstrate why a limiting instruction would be insufficient in his case, and accordingly, his motion for severance is DENIED.

II.     Witness Identification

Eley also seeks to suppress identification evidence obtained pursuant to an out-of-court identification procedure, contending that the method used to obtain this evidence was "unduly suggestive and unreliable." Def. Mem. at 1, 9–11. In the alternative, Eley seeks a hearing pursuant to *United States v. Wade*, 388 U.S. 218 (1967), to determine whether the procedures used to obtain this identification were, in fact, unnecessarily suggestive. Def. Mem. at 11–12.

A. Legal Standard

Although evidence of a prior identification is generally admissible under the Federal Rules of Evidence, courts must exclude prior identifications that are "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *United States v. DiTommaso*, 817 F.2d 201, 213 (2d Cir. 1987) (alteration in original) (citation omitted). Courts evaluate pretrial identifications using a two-step inquiry. First, courts examine whether the pretrial identification procedures were "unduly suggestive of the suspect's guilt." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990). Identification procedures are "unduly suggestive when they involve coercive elements employed to elicit a specific identification," such as a "very small number of photographs," "a large number of photographs depicting the same person," or "suggestive comments by interrogators to the witness." *United States v. Al-Farekh*, 956 F.3d 99, 111–12 (2d Cir. 2020). Absent such indicia of coercion, the identification is "generally admissible without further inquiry into the reliability

7

of the pretrial identification." *Maldonado-Rivera*, 922 F.3d at 973. But, if a court finds that the pretrial procedures were unduly suggestive, it moves on to the second step of the inquiry, and must "weigh the suggestiveness of the pretrial process against factors suggesting that an in-court identification may be independently reliable rather than the product of the earlier suggestive procedures." *Id.*

Under *Wade*, a court may hold an evidentiary hearing on the admissibility of pretrial identification evidence, but a defendant "may not baldly request" such a hearing. *United States v. Berganza*, No. 03 Cr. 987, 2005 WL 372045, at *10 (S.D.N.Y. Feb. 16, 2005). To demonstrate entitlement to a hearing, a defendant must "allege facts supporting his contention that the identification procedures used were impermissibly suggestive," that is, he must make a "threshold showing" of suggestiveness. *Id.*

      B.  Application

In light of these standards, the Court finds that there is no basis to hold a *Wade* hearing in this case, let alone to suppress evidence of the pretrial identification. A photographic array is considered unduly suggestive where "the picture of the accused . . . so stood out from all the photographs as to suggest to an identifying witness that [the person] was more likely to be the culprit." *Jarrett v. Headley*, 802 F.2d 34, 41 (2d Cir. 1986) (citation and quotation marks omitted) (alteration in original). But, the relevant photographs need not be identical— "minor differences in lighting, facial hair, and the like among the photographs . . . do not render the array suggestive." *United States v. Williams*, No. 13 Cr. 580, 2014 WL 144920, at *2 (S.D.N.Y. Jan. 15, 2014).

Having reviewed the photo array in question,[3] the Court finds no basis to conclude that it was unduly suggestive. It contains sixteen photographs, and is not, therefore, "so small as to make the presentation itself unfairly suggestive." *Jarrett*, 802 F.2d at 41. And, based on the Court's review, Eley's picture does not "stand out from the others." *United States v. Brown*, No. 14 Cr. 509, 2017 WL 825314, at *2 (S.D.N.Y. Mar. 2, 2017). There are numerous pictures in the array that are visually similar ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Although there are some differences between the photographs in terms of facial hair and hairstyle, these minor distinctions alone do not make the array unduly suggestive.

Similarly, Eley has failed to support his argument that he is entitled to a *Wade* hearing. Eley asserts that the Government has provided "limited information" as to how the identification was conducted, and as a result, there is "currently no indication that [such procedures were] conducted in an appropriate fashion, or that measures were taken to ensure that it was not unduly suggestive." Def. Mem. at 10–11. But, this misstates the parties' respective burdens—it is Eley who must show that the identification was conducted improperly. *United States v. Adeniyi*, No. 03 Cr. 86, 2003 WL 21146621, at *3 (S.D.N.Y. May 14, 2003); *see also United States v. Swain*, No. 08 Cr. 1175, 2011 WL 4348142, at *7 (S.D.N.Y. Aug. 16, 2011) (collecting cases). And, Eley points to no specific defects in the identification procedure or the photo array itself, nor does he establish that there was "improper police misconduct.". *Perry v. New Hampshire*, 565 U.S. 228, 238–41 (2012).

---

[3] A copy of the photo array at issue was filed under seal by the Government on May 15, 2022.

In addition, the Government submits the affidavit of Detective Michael Munroe, an officer with the New York City Police Department, who was present at the identification procedure. Munroe Aff. ¶¶ 1–2, ECF No. 356-1. Munroe states that no member of law enforcement "suggest[ed] to the [w]itness" which photographs were of the defendants in this matter, or provided "any verbal or non-verbal cues about which photographs should be identified by the [w]itness." *Id.* ¶ 6. "Assuming these representations to be true, there is plainly no basis for suppression." *Brown*, 2017 WL 825314, at *2.

Eley's suggestion of impropriety focuses on the witness's actions—specifically, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ But, even assuming these actions were somehow improper or suspect, the due process concerns with suggestive identification procedures are "linked . . . only to improper police arrangement of the circumstances surrounding an identification," *Perry*, 565 U.S. at 242, and such constitutional protections do not apply "when the taint stems from the actions of a private individual," *Dixson v. Lamanna*, No. 18 Civ. 8285, 2022 WL 19180, at *22 (S.D.N.Y. Jan. 3, 2022). Any suspicion of impropriety as to the witness's identification "may be adequately tested through cross-examination [of the witness] at trial." *United States v. Padilla*, No. 94 Cr. 313, 1994 WL 681812, at *8 (S.D.N.Y. Dec. 5, 1994).

The Court finds that the identification procedure at issue here was not unduly suggestive, and need not consider whether the identification evidence is independently reliable. *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001). Eley's motion to suppress identification evidence is, therefore, DENIED.

## CONCLUSION

For the reasons stated above, Eley's motion is DENIED. The Clerk of Court is directed to terminate the motion pending at ECF No. 349.

SO ORDERED.

Dated: May 20, 2022
       New York, New York

_____
ANALISA TORRES
United States District Judge