UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-against-

STEFVON ELEY,

Defendant.

ANALISA TORRES, District Judge:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  6/26/2026____

20 Cr. 78-3 (AT)

**ORDER**

Defendant, Stefvon Eley, has filed a motion for compassionate release under 18 U.S.C.

§ 3582(c)(1)(A)(i), seeking at least a three-year reduction in his term of imprisonment.  *See* Mot.

at 1, ECF No. 560; Mem. at 2, ECF No. 561; Opp., ECF No. 564; Reply, ECF No. 568.[1]  For the

reasons stated below, the motion is denied.

### BACKGROUND

Defendant does not challenge the facts underlying his conviction or sentence.  Those

facts reflect that, from at least 2011 to 2020, Defendant was a member or associate of the

Monroe Houses Crew, a gang based in the James Monroe Houses in the Bronx.  Pre-Sentence

Investigation Report ("PSR") ¶¶ 22–23, ECF No. 414.  In June of 2017, Defendant "shot and

seriously injured a disfavored member of the Monroe Houses Crew by shooting him in the

stomach inside of the courtyard of Monroe Houses," and in May of 2018, Defendant "and other

members of the Monroe Houses Crew committed a drive-by shooting against rival gang

members," during which Defendant "fired at least four shots."  *Id.* ¶¶ 28–29.  No one was injured

during the second incident, but two unoccupied parked vehicles and a deli store front suffered

---

[1] Because of the sensitive medical information regarding nonparties contained in Defendant's submissions, Defendant submitted, and the Court accepted, unredacted versions of his memorandum, reply, and reply exhibits under seal.  *See* ECF Nos. 573–75.

property damage.  *Id.* ¶ 29.

On July 27, 2022, Defendant pleaded guilty to the lesser included firearms offenses in Counts Five and Seven of the Indictment, which involved the brandishing, use, and carrying of a firearm in furtherance of a crime of violence.  *See* 07/27/2022 Minute Entry.  On October 31, 2023, citing the seriousness of Mr. Eley's offenses, his lengthy criminal history, and the fact that he incurred ten disciplinary infractions while detained prior to sentencing, the Court sentenced Defendant to 15 years' imprisonment, to be followed by four years of supervised release.  *See* Sent'g Tr. at 31:13–32:22, ECF No. 469; *see also* Judgment at 1–3, ECF No. 461.  The 15-year sentence was above the range calculated by the United States Sentencing Guidelines, stipulated in Defendant's plea agreement, and recommended by Probation, which was 144 months', or 12 years', imprisonment.  *See* Sent'g Tr. at 5:10–15, 6:22–7:1; PSR¶ 45.  The sentence was, however, within the range sought by the Government, which was a sentence of at least 15 years. Sent'g Tr. at 7:4–6.  Defendant's current motion essentially asks the Court to recalculate his sentence such that it falls within the Guidelines range.

## LEGAL STANDARD

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) provides that:

> the court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

To be entitled to relief under this provision, a defendant must satisfy the exhaustion requirement and demonstrate that "extraordinary and compelling reasons" warrant a reduction of his sentence.  *Id.*  In determining whether such extraordinary and compelling reasons exist, a court

2

may consider, as relevant here, "[t]he death or incapacitation of the caregiver of the defendant's minor child," "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent," a defendant's rehabilitation "in combination with other circumstances," and "any other circumstance or combination of circumstances" that are "similar in gravity" to certain enumerated circumstances.  U.S.S.G. § 1B1.13(b)(3), (b)(5), (d).  In considering a motion for compassionate release, the Court is not bound by the Guidelines and has discretion to consider whether a defendant has shown extraordinary and compelling reasons for a sentence reduction so long as rehabilitation alone is not considered to be an extraordinary and compelling reason.  *See United States v. Brooker*, 976 F.3d 228, 237–38 (2d Cir. 2020).

The Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a), which include "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed . . . medical care, or other correctional treatment in the most effective manner."  A court may deny a motion for compassionate release "if, in its discretion, compassionate release is not warranted because [the] Section 3553(a) factors override . . . what would otherwise be extraordinary and compelling circumstances."  *United States v. Gotti*, 433 F. Supp. 3d 613, 615 (S.D.N.Y. 2020).

## DISCUSSION

Defendant argues that four sets of "extraordinary and compelling reasons" warrant a three-year reduction of his sentence: (1) his family circumstances; (2) his age at the time of the crime; (3) the conditions he endured while incarcerated prior to his sentence; and (4) his

rehabilitation.  *See* Mem. at 7–27; 18 U.S.C. § 3582(c)(1)(A)(i).  Having considered these reasons together with the § 3553(a) factors related to his original offense, the Court concludes that Defendant has not established extraordinary and compelling circumstances justifying a reduction of his sentence. Defendant's motion is therefore denied.

First, Defendant contends that "his mother and the two mothers of his children have developed significant health conditions," Mem. at 7, and that these conditions have made Defendant the only remaining family member who is able to care for his mother and a useful caretaker for his children, *id.* at 8–9.  He explains that his mother has numerous ailments which require multiple appointments and regular medications, his family members cannot care for her because they live out of state, and the mother of five of his children has a "serious condition that makes it difficult to care for their children." *Id*. at 8–9; Reply Ex. D, ECF No. 568-4 (Lefone Eley letter).  As for Mariah Tirado, the mother of one of Defendant's children, "[h]er illness and frequent medical appointments make it extremely difficult for her to care for the[] [children] while also trying to provide for the family financially." *Id.* at 9.  Although Defendant has not demonstrated that his mother and the mother of five of his children are incapacitated, *see United States v. Shea*, No. 20 Cr. 412-4, 2025 WL 2821369 (S.D.N.Y. Oct. 3, 2025), or that his family members are wholly unable to care for his mother, *see* Reply Ex. D, Ms. Tirado's medical diagnosis is serious and rises to the level of "incapacitation" sufficient to provide an extraordinary reason for reducing Defendant's sentence. *See* Reply Ex. 3, ECF No. 568-3 (Ms. Tirado letter).

However, considering the context of the original offense, the Court does not find that Ms. Tirado's diagnosis is sufficient to justify a reduced sentence.  Defendant was convicted of two extremely violent offenses, and the Court imposed an above-Guidelines sentence in part because

Defendant continued to engage in violent conduct while incarcerated pretrial. *See* Sent'g Tr. at 32:12–18. Indeed, Defendant has incurred more disciplinary infractions for violent conduct since the sentencing, including for striking another inmate during a fight in 2024, *see* Opp. at 5. His only comment about this incident is that he "learned from that experience" and now has a "changed mindset." Reply at 4. The Court recalls that Defendant indicated that he had learned from prior disciplinary infractions during his statements at his sentencing hearing. *See* Sent'g Tr. at 20:17–23 ("I have numerous [] incident reports, because in 2020 I was younger. . . . Today I'm 26.").[2]

Next, Defendant argues that he was "highly susceptible to peer pressure and influence" when he committed his crimes at the age of 20 and 21, and that he endured difficult conditions of pretrial incarceration at the Metropolitan Correctional Center ("MCC") and Metropolitan Detention Center ("MDC"). Mem. at 11–12, 15–17. These conditions are not recognized by the Guidelines as extraordinary and compelling—Section 1B1.13(b)(2) cites only advanced age and "a serious deterioration in physical or mental health because of the aging process" as an extraordinary and compelling reason, and § 1B1.13(b)(4) requires that a defendant be a victim of "abuse" while in custody. Although the Court acknowledges that young defendants may be particularly susceptible to negative influences from peers, *see* Mem. at 9–12, cases in which courts have reduced sentences for this reason involve facts much more serious than those presented here. For example, in *United States v. Gallego*, No. 95 Cr. 284, 2025 WL 723237,

---

[2] The Court also notes that Defendant's statements failed to appreciate the gravity of his offenses of conviction. For example, although Defendant stated that "I accept and I own up to everything," referencing the crimes he had pleaded guilty to, Sent'g Tr. at 20:17, he emphasized that "I did not want to take this plea" and implied that he had "sign[ed] things that [he] kn[ew] [he] [did]n't want to sign," Sent'g Tr. at 24:4–7, 25:3–8. Although Defendant stated that he was not asking to withdraw his plea at sentencing, Sent'g Tr. at 26:7–8, the Court nonetheless re-allocuted Defendant concerning the circumstances of his plea agreement. *See* Sent'g Tr. at 26:9–28:21; *see generally* PSR (containing no finding as to whether Defendant had accepted responsibility, and showing that no such finding was germane to the proper calculation of Defendant's Guidelines range).

at *1, *4 (S.D.N.Y. Mar. 6, 2025), the Court granted a motion for a sentence reduction where a defendant had already served 32 years of a mandatory life sentence and the facts reflected that in committing the murder of a federal employee, he had been manipulated by a close family member. *See also* Opp. at 5. By contrast, Defendant has served approximately 6 years of a 15-year sentence, and the record does not indicate that anyone manipulated, or even encouraged, him to commit his crimes of conviction. *See* Opp. at 5; *see generally* PSR.[3]

As for Defendant's arguments about detention conditions (which all stem from his confinement at MCC and MDC, not his current institution, *see* Mem. at 12), difficult conditions of confinement, standing alone, are not extraordinary and compelling. *See United States v. Stewart*, No. 20 Cr. 83, 2024 WL 5046927, at *2 (S.D.N.Y. Dec. 9, 2024) (collecting cases).

Last, Defendant cites evidence of his rehabilitation in support of his request. *See* Mem. at 18–27. The Court commends Defendant on the diligent efforts he has undertaken to create programs for other inmates in prison, *see* Mem. at 19, to form prosocial bonds with those inmates, *see, e.g.*, Mem. at 21, to complete several educational courses in prison, *see* Mem. at 23; Exs. 5–6, ECF Nos. 561-5 and -6, and to maintain relationships with his children, *see* Mem. at 25. But this positive trajectory is not unblemished—Defendant engaged in a violent fight less than two years ago, in August 2024. *See* Opp. at 5–6. Therefore, although there is evidence of positive rehabilitation, that evidence is not so overwhelming as to justify a reduction in

---

[3] Additionally, the Court notes that in *Gallego*, the record included letters concerning the defendant's rehabilitation even from "prison staff," claiming his rehabilitation was "exceptional." 2025 WL 723237, at *2. Although Defendant does submit letters in support of his application, the letters are not similarly extraordinary here. *Cf.* Ex. 7, ECF No. 561-7 (letter from prison Counselor, reporting only that Defendant performs his job "with professionalism and respect" and has been "shot free for 1 Year").

Defendant's sentence at this juncture.  Opp. at 6 (collecting cases).

**CONCLUSION**

For the foregoing reasons, Defendant's motion is DENIED.  The Clerk of Court is respectfully directed to terminate the motion at ECF No. 560.

SO ORDERED.

Dated:  June 26, 2026
New York, New York

_____
ANALISA TORRES
United States District Judge